The PEOPLE of the State of
Colorado, Complainant

v.

Alex Frank GALLEGOS, Respondent.

No. 09PDJ022.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

Feb. 3, 2010.

Attorney Regulation. Following a Sanctions Hearing, the Presiding Disciplinary

Judge disbarred Alex Frank Gallegos (Attorney Registration No. 24144) from the practice of law, effective March 6, 2010. Respondent converted trust funds while serving as Trustee and caused injury to the sole beneficiary of the Trust. He also failed to present mitigating evidence or otherwise participate in these proceedings. His misconduct admitted by default constituted grounds for the imposition of discipline pursuant to C.R.C.P. 251.5 and violated Colo. 1.15(a) and 8.4(c).

On November 5, 2009, the Presiding Disciplinary Judge ("the Court") held a Sanctions Hearing pursuant to C.R.C.P. 251.15(b). Lisa E. Frankel appeared on behalf of the Office of Attorney Regulation Counsel ("the People"). Alex Frank Gallegos ("Respondent") did not appear nor did counsel appear on his behalf. The Court now issues the following "Decision and Order Imposing Sanctions Pursuant to C.R.C.P. 251.19(c)."

## DECISION AND ORDER IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(c)

### I. ISSUE

Disbarment is generally appropriate when a lawyer knowingly converts property belonging to a client or third-party and causes injury or potential injury. Respondent converted trust funds while serving as Trustee and caused injury to the sole beneficiary of the Trust. He also failed to answer the complaint or otherwise participate in these proceedings. What is the appropriate sanction for his misconduct?

**SANCTION IMPOSED: ATTORNEY DISBARRED**

### II. PROCEDURAL HISTORY

The People filed a complaint on May 15, 2009. Respondent failed to answer the complaint and the Court granted a motion for default on August 18, 2009. Upon the entry of default, the Court deems all facts set forth in the complaint admitted and all rule viola-

tions established by clear and convincing evidence.[1]

### III. ESTABLISHED FACTS AND RULE VIOLATIONS

The Court hereby adopts and incorporates by reference the factual background of this case fully detailed in the admitted complaint.[2] Respondent took and subscribed the Oath of Admission and gained admission to the Bar of the Colorado Supreme Court on June 8, 1994. He is registered upon the official records, Attorney Registration No. 24144, and is therefore subject to the jurisdiction of the Court pursuant to C.R.C.P. 251.1.[3]

**Background**

In or about October of 1999, Respondent prepared a will ("the Will") and revocable trust for William H. Sherman. The Will had a pour-over provision to the revocable trust, which provided in relevant part:

Section 1. Pour–Over to Trust. All of the rest and remainder of the property which I shall own at my death, excluding any property over which I might have a power of appointment, and after payment of expenses and taxes which are paid pursuant to this Will, shall be distributed to the Trustee or Trustees of the WILLIAM SHERMAN REVOCABLE TRUST dated October 24, 1999 ... to be added to the property of that trust and disposed of in accordance with its terms and any amendments thereto prior to my death.

Respondent prepared an amendment to the revocable trust for Mr. Sherman in 2003 and a second amendment in 2005. The Second Amended Trust (the "Trust") provided the following:

*Residuary Trust Estate*

I give the residue of my estate to the Trustee named below, in trust, as follows:

On the death of William H. Sherman, the Trustee shall establish the Hanna–Sherman Charitable Trust for the benefit of the

1. *See People v. Richards,* 748 P.2d 341, 346 (Colo. 1987).

2. *See* the People's complaint in 09PDJ022 for further detailed findings of fact.

3. The Court takes judicial notice of the fact that the Colorado Supreme Court immediately suspended Respondent from the practice of law pursuant to C.R.C.P. 251.8 on April 13, 2009.

Rio Grande Hospital, located in Del Norte, Colorado. From the Hanna–Sherman Charitable Trust, the Trustee shall make an annual contribution to the hospital of Fifteen Thousand Dollars ($15,000.00) for the purchase of medical equipment which, in the exercise of the Trustee's sound discretion, is in the best interest and benefit to the community as a whole, until such time the trust fund is exhausted.

The Trust does not identify any specific beneficiaries upon Mr. Sherman's death other than the Rio Grande Hospital.[4] Valley Citizens' Foundation for Health Care, Inc. (the "Foundation") is the owner and operator of the Rio Grande Hospital.

The Trust notes that upon Mr. Sherman's death, Respondent shall serve as the Trustee, with the power to appoint a successor Trustee. Prior to Mr. Sherman's death, the Trust had bank accounts with at least three different banking institutions—San Luis Valley Federal Bank, Rio Grande Savings & Loan and Del Norte Federal Bank.

On January 20, 2008, Mr. Sherman died in an automobile accident. Respondent went to Mr. Sherman's house the next day and contacted San Luis Valley Moving Company to move Mr. Sherman's things into storage. Respondent did not inventory the assets of Mr. Sherman's house before he moved them into storage. Instead, Respondent specifically requested their company refrain from completing an inventory and told them he would complete it at a future time.

### Respondent Begins Taking Money from the Trust Bank Accounts

Following Mr. Sherman's death, Respondent opened at least two bank accounts for the Trust—another account at Del Norte Federal Bank and one at Sunflower Bank.[5] The following transactions occurred:

- On or about February 6, 2008, a check was drawn on Del Norte Federal Bank in the amount of $10,000.00, made payable to Gallegos Law Office.
- On or about February 8, 2008, a check was drawn on Del Norte Federal Bank in the amount of $10,000.00, made payable to A. Frank Gallegos.
- On or about February 13, 2008, a check was drawn on Del Norte Federal Bank in the amount of $50,000.00, made payable to Gallegos Law Office, with a memo for "home improve expense."
- On or about February 25, 2008, a check was drawn on San Luis Valley Federal Bank in the amount of $20,000.00, made payable to Frank Gallegos.
- On or about February 28, 2008, a check was drawn on Del Norte Federal Bank in the amount of $5,000.00, made payable to A.F. Gallegos.
- On or about March 21, 2008, a check was drawn on San Luis Valley Federal Bank in the amount of $50,000.00, made payable to A. Frank Gallegos and endorsed to Karen _ikkola [the first letter of her last name is illegible].
- On or about March 27, 2008, a check was drawn on San Luis Valley federal Bank in the amount of $50,000.00, made payable to A. Frank Gallegos.
- On or about March 31, 2008, Respondent made a cash withdrawal in the amount of $3,860.24 from the Del Norte Federal Bank account.
- On or about April 2, 2008, a check was drawn on the Del Norte Federal Bank in the amount of $500.00, made payable to "cash."
- On or about April 7, 2008, a check was drawn on San Luis Valley Federal Bank in the amount of $44,818.47, made payable to A. Frank Gallegos.
- On or about April 15, 2008, a cash-out transaction of $1,000.00 was made in conjunction with a deposit to the Sunflower Bank account.
- On or about April 30, 2008, a debit transaction from the Sunflower Bank account in the amount of $121.63 was made with

---

4. Article III of the Trust provided, "On my death, the Trustee shall make those distributions that I request, either in written form or those requests, which I have conveyed to him orally, prior to my death."

5. The People attempted to determine "date of death" balances for the Trust bank accounts. The approximate total was $1,238,737.68.

the notation of "Qwest 8004238994 Telephone Tel Alex Gallegos."

- On or about May 1, 2008, three debit transactions from the Sunflower Bank account in the amounts of $417.86, $312.20, and $291.28 were made with the bank statement descriptions of "Xcel Energy–PSCO Xcelenerg Tel A. Frank Gallegos," for the first two amounts and "Capital One Phone Pym Tel 7228261264Gallegos Ale" for the third amount.

- On or about May 5, 2008, a check drawn on San Luis Valley Federal Bank in the amount of $14,090.58, was made payable to A. Frank Gallegos. Also on May 5, 2008, a cash deposit of $2,500.00 was made to the Sunflower Bank account.

- On or about June 26, 2008, a debit transaction from the Sunflower Bank account in the amount of $2,900.00 was made with the bank statement description of "Capital One Phone Pym Ppd 7228261264Alex F Galle."

Therefore, in the approximately five months following Mr. Sherman's death, Respondent received a total of $260,812.26 through checks payable to him personally, to his law firm or to "cash," through cash-out transactions on deposits and through payment of personal expenses.[6]

### The Estate Proceedings

Respondent was appointed Personal Representative of the William H. Sherman estate on or about April 21, 2008. Beginning in March 2008, William Dunn, counsel for the Foundation, had requested information from Daniel Powell, counsel for Respondent, regarding the Foundation's interest in the estate. Mr. Powell told Mr. Dunn that he did not have authorization to give him Mr. Sherman's Will or Trust information. On April 17, 2008, Mr. Powell told Mr. Dunn it would be six months before he knew what assets the hospital might receive from the estate and not to call his office in the meantime.

On or about June 26, 2008, the Foundation filed a claim to the assets of the estate of William H. Sherman. On June 30, 2008, they filed a: a) Motion for Interim Accounting, requesting that the court require the Personal Representative to file an interim accounting of the income and expenses of the estate as of July 1, 2008; b) Request for Copy or Filing of Inventory, requesting that the Personal Representative prepare and provide the Foundation, or file with the court, a complete and detailed inventory of assets of the estate of William H. Sherman; and c) Petition for Supervised Administration and Request for Performance Bond.

On July 8, 2008, the court set a hearing date on the Foundation's claim. Mr. Powell, as attorney for the Personal Representative, objected to the claim and all other requests made by the Foundation. He asserted that the Foundation was not an "interested party" and therefore had no standing in the estate of William H. Sherman. Mr. Powell requested that the court hold an evidentiary hearing that was subsequently held on August 12, 2008. The court thereafter granted the Foundation's motion for supervised administration of Mr. Sherman's probate estate.

On September 18, 2008, the court found the Foundation to be an "interested person" to the estate and ordered it to be provided access to all of the pleadings of the estate. The court directed Respondent to communicate with the Foundation as "befits his fiduciary obligations to this sole beneficiary of the estate."

On October 15, 2008, Respondent filed an inventory of the real and personal property of Mr. Sherman's estate. The only item listed in the inventory was proceeds from an insurance company in the amount of $15,587.74. The inventory did not identify any personal assets, vehicles, bank accounts, personal property or real property.

### Respondent Continues Taking Money from the Trust Bank Accounts

Following Mr. Sherman's death, Respondent continued taking money from the Trust

---

**6.** The People subtracted the cash deposit of $2,500.00 made to Sunflower Bank on May 5, 2008 from the amount received by Respondent, as it is possible that the cash was deposited from Respondent's funds.

bank accounts. The following transactions occurred:

- On or about October 6, 2008, a cash-out transaction of $200.00 was made in conjunction with a deposit to the Sunflower Bank account.

- On or about November 5, 2008, a cash-out transaction of $228.39 was made in conjunction with a deposit to the Sunflower Bank account.

- On or about November 17, 2008, a debit transaction from the Sunflower Bank account in the amount of $2,000.00 was made with the bank statement description of "Capital One Phone Pym Ppd 7228261264Gallegos Ale."

- On or about December 11, 2008, a cash-out transaction of $528.39 was made in conjunction with a deposit to the Sunflower Bank account.

Therefore, from February 6, 2008 through December 11, 2008, Respondent received a total of $263,769.04 through checks payable to Respondent personally, to his law firm or to "cash," through cash-out transactions on deposits and through payment of personal expenses.[7]

### Removal of Respondent as Trustee and Personal Representative

On December 15, 2008, the Foundation filed a Petition for Supervised Trust Administration and Replacement of Trustee. On December 30, 2008, the court held a hearing on the Foundation's petition. Notwithstanding the bank account records showing Respondent withdrew significant amounts of funds from the Trust bank accounts, he testified at the hearing that he only withdrew funds from the Trust assets to maintain Mr. Sherman's property and home, including mowing the lawn and trimming the shrubs. Respondent testified that he had not paid any bill or disposed of property other than to pay for Mr. Sherman's funeral expenses.

Respondent testified that he has not paid personal bills out of the Trust assets.

On January 2, 2009, *nunc pro tunc* to December 30, 2008, the court issued an Order for Supervised Administration and Removal of Trustee. The court found that Respondent had failed to fulfill his fiduciary obligation to take inventory of the assets of Mr. Sherman's estate or the Trust; failed to keep accurate records of his withdrawals from Mr. Sherman's trust accounts and that his sworn testimony was in conflict with the bank records admitted into evidence; and failed to manage the Trust for the benefit of the Rio Grande Hospital, as sole beneficiary of the Trust.

In the order, the court temporarily "removed" Respondent as the Personal Representative of the estate of William H. Sherman and as Trustee of the William H. Sherman Revocable Trust and suspended Respondent from his duties as the Personal Representative of the estate of William H. Sherman and as Trustee of the William H. Sherman Revocable Trust. The court further ordered Mr. Dunn to inform the court of the name and address of a certified public accountant with a background in forensic accounting so that a complete inventory and accounting of the amount and whereabouts of Mr. Sherman's assets could be prepared for the court.[8]

On February 13, 2009, the court issued an Order for Turnover of Financial Records and Appointment of Replacement Personal Representative and Trustee. In the order, the court noted that it had previously removed Respondent as the Personal Representative of the estate and as Trustee of the Trust and appointed Matthew K. Hobbs to serve as the replacement Personal Representative of the estate of William H. Sherman and as successor Trustee of the William H. Sherman Revocable Trust. As of April 30, 2009, Mr. Hobbs noted that the amount definitively known that Respondent and others converted is approximately $500,000.00.

---

**7.** As previously noted, the People subtracted the cash deposit of $2,500.00 made to Sunflower Bank on May 5, 2008. The cash-out transactions on April 15, October 6, November 5, and December 11, 2008 were associated with deposits of checks payable to the Trust by entities other than Respondent (such as annuity payments), so credit was not given to Respondent for these deposits.

**8.** Testimony from the hearing shows there may be other assets missing from the estate.

■ Respondent did not give the Foundation, as the sole beneficiary of the Trust, any of the funds from the Trust. He instead knowingly exercised unauthorized dominion and/or ownership over the Trust's funds. As a result of such conduct, Respondent knowingly converted or misappropriated funds belonging to the Trust and violated Colo. RPC 8.4(c).

In addition, by removing the Trust's funds from the Trust's bank accounts, Respondent failed to keep third party funds separate from his own property. As a result of such conduct, Respondent technically converted or misappropriated funds belonging to the Trust and violated Colo. RPC 1.15(a).

■ Finally, Respondent engaged in dishonest conduct when he testified under oath at the hearing held on December 28, 2008. He testified that he only took out funds from the Trust's assets to maintain Mr. Sherman's property and home, including mowing the law and trimming the shrubs; that he had not paid any bill or disposed of property other than to pay for Mr. Sherman's funeral expenses; and that he has not paid personal bills out of the trust assets. As a result of such conduct, Respondent falsely testified and violated Colo. RPC 8.4(c).

## IV. *SANCTIONS*

■ The ABA Standards for Imposing Lawyer Sanctions ("ABA *Standards*") and Colorado Supreme Court case law are the guiding authorities for selecting and imposing sanctions for lawyer misconduct.[9] In imposing a sanction after a finding of lawyer misconduct, the Court must first consider: the duty violated; the lawyer's mental state; the actual or potential injury caused by the lawyer's misconduct; and the existence of aggravating and mitigating evidence pursuant to ABA *Standard* 3.0.

Respondent's failure to participate in these proceedings leaves the Court with no alternative but to consider only the established facts and rule violations set forth in the complaint as well as testimony offered by the People from Connie Flickenger, William Dunn, and Matthew K. Hobbs in evaluating these factors.[10] The Court finds that Respondent violated duties owed to his client as Trustee and to the public.[11] Respondent specifically violated his duty to preserve the property of his client for its rightful purpose and violated his duty to act honestly. The entry of default established that Respondent *knowingly* engaged in this conduct and caused actual financial harm to the Foundation when he converted the Trust's funds. The testimony presented demonstrates that the Foundation intended to use these funds for the only hospital available to citizens of the San Luis Valley.

The Court finds that several aggravating factors exist in this case including a dishonest or selfish motive, a pattern of misconduct, multiple offenses, substantial experience in the practice of law, and illegal conduct.[12] Due in part to the absence of any contradictory evidence, the Court finds clear and convincing evidence to support each aggravating factor. Respondent failed to participate in these proceedings and therefore presented no evidence in mitigation. However, the People conceded that Respondent has no prior disciplinary record consistent with ABA *Standard* 9.32(a). They also acknowledged that Respondent went through a divorce and received a diagnosis of Multiple Sclerosis consistent with ABA *Standard* 9.32(c) and that he has been sentenced to a lengthy prison term as a result of a criminal conviction, and thus, imposition of other penalties or sanctions consistent with ABA *Standard* 9.32(k).

The ABA *Standards* suggest that disbarment is the presumptive sanction for the most serious misconduct demonstrated by the admitted facts and rule violations in this case. Disbarment is generally appropriate

---

9. *See In re Roose*, 69 P.3d 43, 46–47 (Colo.2003).

10. The Court also admitted the People's Exhibits 1–8 during the Sanctions Hearing.

11. *See* ABA *Standards* 4.0 and 5.0.

12. *See* ABA *Standards* 9.22(b), (c), (d), (i) and (k). On August 17, 2009, Respondent entered a plea of guilty to a violation of C.R.S. § 18–4–401(1), (2)(c) (theft), a class 4 felony. He was sentenced to two years in the Department of Corrections with three years of parole on October 19, 2009.

when a lawyer knowingly converts client property and causes injury or potential injury to a client.[13] Reprimand generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation that adversely reflects on the lawyer's fitness to practice law.[14]

■ Colorado Supreme Court case law applying the ABA *Standards* also holds that disbarment is the presumptive sanction for conversion of client or third-party funds.[15] Knowing conversion or misappropriation of client money "consists simply of a lawyer taking a client's money entrusted to him, knowing that it is the client's money and knowing that the client has not authorized the taking." [16] Neither the lawyer's motive in taking the money, nor the lawyer's intent regarding whether the deprivation is temporary or permanent, are relevant for disciplinary purposes.[17] Significant mitigating factors may overcome the presumption of disbarment, however, Respondent failed to present any in this case and those otherwise acknowledged by the People are insufficient to vary from the presumed sanction.[18]

## V. CONCLUSION

One of the primary goals of our disciplinary system is to protect the public from lawyers who pose a danger to them. The facts established in the complaint, without explanation or mitigation, reveal the harm Respondent has caused his client and the public. He knowingly converted or misappropriated funds belonging to the Trust and engaged in dishonest conduct when he falsely testified under oath at the hearing. Upon consideration of the nature of Respondent's misconduct, his mental state, the actual and potential harm he caused, and the absence of mitigating factors, the Court concludes that the ABA *Standards* and Colorado Supreme Court case law both support disbarment in this case.

## VI. ORDER

The Court therefore **ORDERS**:

1. Alex Frank Gallegos, Attorney Registration No. 24144, is hereby **DISBARRED** from the practice of law and his name shall be stricken from the list of attorneys licensed to practice law in the State of Colorado. The disbarment **SHALL** become effective thirty-one (31) days from the date of this order in the absence of a stay pending appeal pursuant to C.R.C.P. 251.27(h).

2. Respondent **SHALL** pay restitution in the amount of $446,222.04 to the William H. Sherman Trust and/or the Attorneys Fund for Client Protection for any amounts paid by the fund as a result of this case.[19]

3. Respondent **SHALL** pay the costs of these proceedings. The People shall submit a "Statement of Costs" within fifteen (15) days of the date of this order. Respondent shall have ten (10) days within which to respond.

---

13. *See* ABA *Standard* 4.11.

14. *See* ABA *Standard* 5.13.

15. *See e.g. People v. Dice,* 947 P.2d 339 (Colo. 1997) (attorney took funds in five separate estate, trust, and conservative matters while acting as a fiduciary); and *People v. Robnett,* 859 P.2d 872 (Colo.1993) (attorney disbarred for converting monies belonging to a trust for which he was the trustee and engaging in deception of his client).

16. *See People v. Varallo,* 913 P.2d 1, 11 (Colo. 1996).

17. *Id.* at 10–11.

18. *See In re Fischer,* 89 P.3d 817 (Colo.2004) (finding significant facts in mitigation).

19. *See* Sanctions Hearing Exhibit 7 for a detailed breakdown of the total amount of restitution.